HARDING, C.J.,
concurring.
I concur with the majority. I write to emphasize that the solution to this country’s firearm epidemic cannot come at the expense of the principles set forth in the federal Constitution. I am aware that our streets and school grounds[5] have become venues of *210 public violence, resulting in large part to the availability and accessibility of firearms. The United States Supreme Court recognized the need for public safety in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the case which created the stop and frisk doctrine.[6] While Terry did not deal with an anonymous tip relating to a firearm, it did address the balancing of safety and the constitutional protection provided by the Fourth Amendment. A review of Terry leads me to conclude that the Supreme Court would require more than a mere anonymous tip before a police intrusion would be authorized by the Fourth Amendment.
This point is exemplified by a careful analysis of the Supreme Court’s language in Terry. The setting in Terry involved “on-the-spot observations of the officer on the beat.” Id. at 20, 88 S.Ct. 1868. The Supreme Court clearly set out the test for determining when such limited intrusions may take place:
[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search “warrant a man of reasonable caution in the belief’ that the action taken was appropriate? Anything less would invite intrusion upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. And simple “‘good faith on the part of the arresting officer is not enough.’ ... If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be ‘secure in their persons, houses, papers and effects’ only in the discretion of the police.”
[[Image here]]
... The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticu-larized suspicion or “hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.
Id. at 21-22, 27, 88 S.Ct. 1868 (emphasis added) (citations omitted). Applying this language to the facts of the present case, it becomes obvious that the information provided in the anonymous tip in question was the equivalent of an “inchoate and unparticular-ized suspicion or hunch,” which in and of itself is insufficient to justify police intrusion. Thus, if the language of Terry, and indeed the Fourth Amendment, is to have any meaning, the evidence in the present case must be suppressed. A contrary result would lead to the “evaporation” of the constitutional rights of the Fourth Amendment.
It seems that the main concern of the dissenting justices is the ease with which individuals are able to access weapons, a concern which is well founded. However, the right to bear arms is not the issue in the present case; rather, we are concerned with the right to be free from unreasonable searches and seizures. The effect of allowing a “firearms exception” would be the equivalent of saying that there are no unreasonable searches and seizures, and thus no Fourth Amendment rights, so long as the anonymous informant uses the magic word “firearm.” To allow such an exception would threaten the basic protections of this nation’s Constitution.[7]
KOGAN and ANSTEAD, JJ., concur.

. The result of the present case might have been different had the frisk been conducted by a school official on school grounds. See Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 656, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) ("Fourth Amendment rights ... are different in public schools than elsewhere....’’); New Jersey v. T.L.O., 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (”[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.’’).

. In Terry, the Supreme Court held that a police . officer is permitted to stop an individual in circumstances where the officer possesses reasonable suspicion that the individual is engaged in criminal activity. 392 U.S. at 19-23, 88 S.Ct. 1868. An officer is also permitted to conduct a limited frisk of the individual if the officer possesses reasonable suspicion that the individual is armed and poses a threat to the officer or others. Id.

. In his dissent, Justice Overton refers to the frisk as a "minimal privacy intrusion.” To the contrary, as noted by the United States Supreme Court in Terry:
[I]t is simply fantastic to urge that [a frisk] performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with hands raised, is a "petty indignity.” It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and *211 arouse strong resentment, and is not to be undertaken lightly.
Terry, 392 U.S. at 16-17, 88 S.Ct. 1868 (footnote omitted).
Justice Overton also focuses on the fact the defendant in the present case is a juvenile. It is important to point out that the "firearm exception” would apply to all citizens, not just juveniles.